UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSEPH GREGORY DUNBAR et al.,

                  Plaintiffs,                Case No. 1:15-cv-881

v.                                    Honorable Robert Holmes Bell

YVONNE ROSE,

                  Defendant.
_____/

## OPINION

This is a civil rights action brought by 33 state prisoners pursuant to 42 U.S.C. § 1983. For the reasons set forth below, the Court will dismiss all of the Plaintiffs, except for Joseph Gregory Dunbar. Plaintiff Dunbar will be required to file an amended complaint on the form provided by the Court within twenty-eight days. The Court also will deny the motion to file a class action (docket #1) and "Exparte Motion for Injunctive Relief, Motion for Evidentiary Hearing, Motion to Waive Fees and Costs Temporarily" (docket #3).

## Discussion

### I.      Motion for Class Certification

The complaint includes a motion to file a class action (docket #1). For a case to proceed as a class action, the court must be satisfied on a number of grounds, including the adequacy of class representation. *See* FED. R. CIV. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.

1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99-2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000). Because Plaintiffs are incarcerated *pro se* litigants, the Court finds that they are not appropriate representatives of a class. Therefore, Plaintiffs' motion for class certification will be denied.

## II.   **Misjoinder of Parties**

Federal Rule of Civil Procedure 20(a)(1) allows the permissive joinder of plaintiffs in a single action, if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action. FED. R. CIV. P. 20(a)(1). In considering whether joinder should be permitted, the Court is mindful that "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). This impulse, however, does not provide a plaintiff or plaintiffs free license to join multiple defendants into a single lawsuit where the claims against the defendants are unrelated. *See, e.g., Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) (per curiam); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Nor can multiple plaintiffs pass the two-part test of Rule 20(a)(1) where each plaintiff provides a different factual background giving rise to their "mutual" cause of action. *Coughlin*, 130 F.3d at 1350; *Abdelkarim v. Gonzales*, No. 06-14436, 2007 WL 1284924, at *4-5 (E.D. Mich. Apr. 30, 2007). The limitations of joining multiple plaintiffs and defendants in a single lawsuit are often compounded where the plaintiffs are prisoners. *Boretsky v. Corzine*, No. 08-2265,

2008 WL 2512916, at *5 (D. N.J. Jun. 23, 2008) ("Among the difficulties . . . are the need for each plaintiff to sign every pleading, and the consequent possibilities that documents may be changed as they are circulated, or that prisoners may seek to compel prison authorities to permit them to gather to discuss the joint litigation.  These courts also have noted that jail populations are notably transitory, making joint litigation difficult.") (collecting cases).

Furthermore, prisoners may use misjoinder as a means of circumventing the filing fee provisions of the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, which require a prisoner to pay the full filing fee in installments.[1]  *See* 28 U.S.C. § 1915(b)(1); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997); *Hampton v. Hobbs*, 106 F.3d 1281 (6th Cir. 1997).  When a case is filed by more than one prisoner, the Plaintiffs share the fees and costs proportionately.  *See Talley-Bey v. Knebl*, 168 F.3d 884, 887 (6th Cir. 1999); *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1137 (6th Cir. 1997).  Thus, multiple prisoners may file a single complaint with unrelated claims in an attempt to pay a reduced fee.  Likewise, a prisoner who is barred from proceeding *in forma pauperis* under the three strikes provision set forth in § 1915(g), may file a complaint with other improperly joined prisoner plaintiffs in order to reduce his portion of the filing fee to an amount he can afford to pay, thereby frustrating the intent of the statute to curb abusive prisoner litigation.

In this case, Plaintiffs assert violations of their First Amendment right of access to the courts.  Plaintiffs allege that the legal books in the Richard A. Handlon Correctional Facility have been replaced by an electronic law library with four work stations.  Prisoners are allowed access to

---

[1]As of May 1, 2013, the filing fee for a civil action was increased from $350.00 to $400.00.  However, if the Court grants a *pro se* litigant leave to proceed *in forma pauperis*, the filing fee remains $350.00.

the electronic law library no more than one hour per day, four times per week, which is inadequate. Plaintiffs also claim that they have not been trained in how to use the computer system for legal research. Plaintiffs further allege that due to limited capacity, a prisoner may wait up to three days after making a request to be called out to the law library. Similarly, a prisoner may have to wait two to three days to get legal copies, regardless of whether he has a court deadline to meet. In addition, Plaintiffs contend that prisoners with GEDs, who do not qualify for assistance through the Legal Writer Program, are not permitted to talk or pass notes in the library, and, thus, are effectively barred from receiving assistance from other prisoners with greater legal experience and knowledge.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal

-4-

materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.

*Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The

Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355.  "Thus, a prisoner's right to access the courts extends to direct appeals,

habeas corpus applications, and civil rights claims only."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 391

(6th Cir. 1999) (en banc).  Moreover, the underlying action must have asserted a non-frivolous claim.

*Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed

actual injury to include requirement that action be non-frivolous).

        In addition, the Supreme Court squarely has held that "the underlying cause of

action . . . is an element that must be described in the complaint, just as much as allegations must

describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415

(2002) (citing *Lewis*, 518 U.S. at 353 & n.3).  "Like any other element of an access claim, the

underlying cause of action and its lost remedy must be addressed by allegations in the complaint

sufficient to give fair notice to a defendant."  *Id.* at 416.

        While Plaintiffs are asserting the same deficiencies in the law library, they cannot

seek relief jointly because each Plaintiff must specifically allege how the lack of legal resources or

assistance caused him to suffer actual injury to a pending or contemplated habeas corpus or civil

rights action.  Moreover, because each Plaintiff's claim of actual injury would be founded upon a

unique set of facts and circumstances, they would not arise under the same transaction or occurrence, and, thus, are improperly joined.

Under FED. R. CIV. P. 21, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 07-CV-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008), *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("Parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

-6-

In this case, Plaintiffs bring causes of action under 42 U .S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). To the extent Plaintiffs provide dates for their claims, their causes of action accrued less than three years ago. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003). Because the Court will dismiss Plaintiffs without prejudice under FED. R. CIV. P. 21, the time during which the current suit was pending will thus toll the statute of limitations. As Plaintiffs will not suffer gratuitous harm if this action is dismissed, the Court will exercise its discretion under Rule 21 and dismiss all Plaintiffs, except Plaintiff Dunbar, without prejudice to the institution of new, separate lawsuits by the remaining Plaintiffs. *See Coughlin*, 130 F.3d at 1350 ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs."); *Carney*, 2008 WL 485204, at *3 (same).

III.  **Amended Complaint**

Plaintiff Dunbar will be required to file an amended complaint on the form provided by the Court within twenty-eight days of this Opinion and Order. If Plaintiff wishes to proceed with his action, he must carefully fill out the form and submit it to the Court. The Court will direct the Clerk to send to Plaintiff a copy of the form complaint under 42 U.S.C. § 1983 for a civil action by a person in state custody. The amended complaint will take the place of the original complaint, so it must include all of the Defendants that Plaintiff Dunbar intends to sue and all of the claims that

Plaintiff Dunbar intends to raise.  The case number shown above must appear on the front page of the amended complaint.

IV.   **Motion for Injunctive Relief**

In their ex parte motion for injunctive relief (docket #3), Plaintiffs ask the Court to "restore our law books, and that [sic] be called over to the law library when we sign up to use the library, that we have adequate amounts of time to do our research in the law library, that we be allowed to assist each other in the law library, that a class be opened to teach us how to use the computers for legal research in the law library."  (Exparte Mot., docket #3, PageID #16-17.)  The motion will be denied as moot with regard to the Plaintiffs being dismissed from this action without prejudice.  For the reasons set forth below, the motion also will be denied with regard to Plaintiff Dunbar.

The issuance of preliminary injunctive relief is committed to the discretion of the district court.  *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).  In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction.  *Id.*  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers.  *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal*, 467 F.3d at 1009.  Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature

-8-

of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438 n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint that he has a substantial likelihood of success on his access to the courts claim. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not alleged an actual injury resulting from the alleged conditions in the law libary. Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. As set forth above, Plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See*

-9-

*Glover*, 855 F.2d at 286-87.  That showing has not been made here.  Accordingly, Plaintiff's motion for preliminary relief will be denied.

<h3 style="text-align:center">V.      **Motion for Waiver of Fees and Costs**</h3>

Plaintiffs also moved for temporary waiver of fees and costs (docket #3).  As the only remaining Plaintiff, Plaintiff Dunbar is required to pay the filing fee or to apply in the manner required by law to proceed *in forma pauperis*.  Under the provisions of the Prison Litigation Reform Act of 1995, if a prisoner wishes to proceed *in forma pauperis*, the prisoner must file a certified copy of a prisoner trust account statement and an affidavit of indigence. 28 U.S.C. § 1915(a)(2); *McGore*, 114 F.3d at 605.  Plaintiff has failed to file the required prisoner trust account statement and affidavit of indigence in order to proceed *in forma pauperis*.  Consequently, Plaintiff's motion for waiver of fees and costs will be denied and the Court will enter a separate order regarding Plaintiff's deficiency.

Orders consistent with this Opinion will be entered.


Dated: <u>October 19, 2015</u>               <u>/s/ Robert Holmes Bell           </u>
                                                      ROBERT HOLMES BELL
                                                    UNITED STATES DISTRICT JUDGE

-10-